# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| BRUCE W. THOMPSON AND<br>JOHN COLE PASSMAN | CIVIL ACTION |
| VERSUS | |
| RUFF & TUFF ELECTRIC<br>VEHICLES, INC. | NO. 10-449-BAJ-M2 |

## RULING & ORDER

This matter is before the Court on the Motion to Compel Discovery Responses, and for Attorney's Fees and Costs (R. Doc. 9) filed by plaintiffs, Bruce W. Thompson and John Cole Passman (collectively "plaintiffs"). Defendant, Ruff & Tuff Electric Vehicles, Inc. ("RTEV" or "defendant"), has filed an opposition (R. Doc. 12) to this motion, in response to which plaintiffs have filed a reply memorandum (R. Doc. 15).

## FACTS & PROCEDURAL BACKGROUND

On July 9, 2010, plaintiffs filed their Original Complaint[1] and propounded Interrogatories and Requests for Production of Documents to RTEV. Responses to those discovery requests were served upon plaintiffs on October 21, 2010. According to plaintiffs, many of RTEV's responses were evasive and/or incomplete and must be treated as a failure to disclose, answer, or respond under Fed. R. Civ. P. 37. On November 19, 2010, plaintiffs sent a letter to RTEV, pointing out specific deficiencies in the discovery

---

[1] Plaintiffs, who were initially employees of RTEV and later independent brokers of RTEV, who sold RTEV's electric vehicles and accessories, brought this suit following the termination of their status as independent brokers on or about March 24, 2010. They contend that they received their last commission checks from RTEV on or about February 23, 2010 and that they are owed substantial commissions for their sales of electric cars and accessories, in accordance with their Broker Agreement with RTEV. They further contend that they are entitled to amounts for "paid time off" that they never received while they were still direct employees of RTEV, as well as to statutory penalties and attorney's fees.

1

responses and requesting that same be amended and supplemented. Plaintiffs' counsel then followed up with defense counsel concerning the outstanding supplemental discovery responses on various occasions by telephone and email.[2] Despite those efforts, plaintiffs had not received supplemental or amended discovery responses as of March 1, 2011, and they therefore filed the present motion. Through the motion, plaintiffs seek an order compelling RTEV to provide supplemental or amended responses to their Interrogatory Nos. 6-12 and Request for Production Nos. 2, 7-13, 17 and 18. Plaintiffs also seek an award of the reasonable expenses, including attorney's fees, that they incurred in prosecuting this motion.

## LAW & ANALYSIS

**I.     Interrogatories at issue:**

**(A)     Interrogatory Nos. 6-9:**

In Interrogatory No. 6, plaintiffs request that RTEV identify all of its vehicles and/or accessories ordered by anyone or any company "from or about July 1, 2009 to July 1, 2010." Interrogatory No. 7 seeks an outline, with specificity, of the precise number of vehicles and/or accessories orders invoiced "from or about July 1, 2009 to July 1, 2010." In Interrogatory No. 8, plaintiffs request an outline, with specificity, of the precise number of vehicles and/or accessory orders invoiced "from or about July 1, 2009 to July 1, 2010" as well as the state from which the order was placed. Finally, Interrogatory No. 9 seeks an identification by RTEV of all sums or other payments received by it for all vehicles and/or

---

[2] According to plaintiffs' counsel's "Certificate of Good Faith Attempts to Resolve Discovery Dispute Pursuant to Federal Rule 37(a)(1)," he either spoke with defense counsel telephonically, left a voicemail, or emailed defense counsel regarding the outstanding discovery on the following dates: November 24, 2010, January 25, 2011, February 16, 2011, February 18, 2011, February 21, 2011, February 23, 2011, and February 24, 2011.

2

accessories ordered "from or about July 1, 2009 to July 1, 2010."

RTEV objected to Interrogatory Nos. 6-9 on the basis that they are overly-broad and overly-burdensome and that they seek information that is wholly irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. They also objected on the basis that, pursuant to Paragraph 3 of the Independent Broker Agreement in force at the relevant time, the plaintiffs would only be entitled to information concerning vehicles and/or accessories that were related to orders they submitted to the company.

Paragraph 3 of the Independent Broker Agreement, to which the plaintiffs and RTEV agreed in writing, states the following:

> VEHICLES: The Company shall pay the Broker a commission at the rate of 10% of the dealer list price per unit set by company.
>
> ACCESSORIES: The Company shall pay the Broker a commission at the rate of 3% of the gross order of the accessory price set by the company on all car stocking dealers that are sold by a broker. All existing house accounts are excluded.
>
> Note: Commissions will only be paid to the Broker on orders submitted on the company order form and submitted to the company by the Broker.

*See*, Exhibit A to RTEV's opposition. Thus, under that broker agreement, which began on July 1, 2009, plaintiffs are only entitled to payment of commissions for those orders that they submitted to RTEV on company order forms.[3] An email from Bo Huff, co-owner of

---

[3] Although plaintiffs contend, in their reply memorandum, that the Independent Broker Agreement did not become effective until September 2009 because that is when they signed the agreement, the agreement nevertheless specifically indicates that it began on July 1, 2009. Had plaintiffs intended the effective date of the agreement to be different, they should have amended that portion of the agreement before signing it. Based on the express language of the agreement, its effective date was "July 1, 2009."

3

RTEV, to the plaintiffs dated July 7, 2009 (which is attached to plaintiffs' motion) further indicates that, under the broker agreement, RTEV was "looking for completed sales orders with proper information" and that plaintiffs' customers needed to contact the plaintiffs directly if they wanted to make a purchase from RTEV so that plaintiffs would know what commissions they were due, and RTEV would not have to spend hours trying to figure out what commissions the plaintiffs made in a particular week. *See*, Exhibit C to plaintiffs' motion.

Plaintiffs now seek information concerning all sales of RTEV vehicles and/or accessories ordered by anyone or any company from the date the broker agreement commenced, July 1, 2009, through July 1, 2010. The undersigned agrees with RTEV that such request is overbroad. First, despite the fact that plaintiffs contend, in their reply memorandum, that their requests are limited to vehicle and accessory sales "within [p]laintiffs' assigned territories," Interrogatory Nos. 6-9 contain no such limitation. Furthermore, with the exception of RTEV's sales to GKU (which are discussed in the subsequent section of this Ruling), the terms of the broker agreement and of Bo Huff's email appear explicit and provide that, for the time period of July 1, 2009 forward, plaintiffs are only entitled to commissions for those orders that they, as brokers, personally submitted to RTEV on company order forms. All other orders, during that time period, appear to be irrelevant to this litigation. Accordingly, to the extent RTEV has not already produced the information requested in Interrogatory Nos. 6-9 relative to orders submitted by plaintiffs to RTEV on company order forms, it shall do so within fifteen (15) days of this Order. Otherwise, no further response to such interrogatories by RTEV is necessary.

**(B)     Interrogatory Nos. 10-12:**

Interrogatory No. 10 requests identification of all payments received by RTEV from GKU Distributing, L.L.C. ("GKU") from July 1, 2009 to July 1, 2010.  Interrogatory No. 11seeks identification of all orders for vehicles and/or accessories received from GKU by RTEV, and in Interrogatory No. 12, plaintiffs seek identification of the number of vehicles shipped to GKU and their model numbers.

RTEV objected to Interrogatory Nos. 10-12 on the ground that those requests seek information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  It also objected on the basis that, under the Independent Broker Agreement in place during the relevant time frame, the plaintiffs were not entitled to receive commissions on sales made to GKU, as they did not assist GKU in any way, nor did they place any orders for GKU to RTEV.  RTEV further stated that any commissions paid to the plaintiffs based upon orders made by GKU was made in error.

In their reply memorandum, plaintiffs indicate that all dealer orders made by them during the relevant time period, other than GKU orders, were submitted to RTEV by plaintiffs on company order forms.  They contend that RTEV "suggested" to them that the GKU orders would be processed differently from other dealer orders.  As evidence of that "suggestion" by RTEV, plaintiffs rely upon the Bo Huff email referenced above.  In that email, Bo Huff made the statement that, "[i]f Charles [Hebert] wants to control the paperflow and you guys are comfortable with that process then so be it."  *See*, Exhibit C to plaintiffs' motion.  Plaintiffs contend that such modification of how the "paperflow" would be processed related to the GKU transactions.  They further assert that there was "verbal communication" from RTEV to plaintiffs regarding the flow of GKU orders, as there were

5

only going to be "a few, very large, complicated orders with millions of dollars in deposit monies." *See*, Plaintiffs' reply memorandum, R. Doc. 15, pp. 3-4. Plaintiffs contend that Bo Huff's email indicates that the parties agreed that Charles Hebert would handle the paperwork relating to the GKU orders to "keep from having 'multiple hands' involved, and [p]laintiffs would take care of sales efforts" relating to the GKU sales. Plaintiffs argue that the best evidence of the parties' true intent with respect to the GKU sales is "how they operated under the Independent Broker Agreements" and, because they were "consistently being paid by RTEV for the GKU orders being processed through Charles Hebert over a period of time," they are entitled to the requested information and to commissions concerning the GKU sales.

The undersigned finds that, at least for purposes of discovery, plaintiffs have sufficiently demonstrated that the GKU sales may have been treated differently than other dealer sales under the Independent Broker agreement (*i.e.*, that, based upon communications and verbal agreements with RTEV subsequent to the effective date of the Independent Broker Agreement, the plaintiffs may not have been required to handle the paperwork with respect to those particular sales in order to be entitled to commissions relative to those sales), and as a result, plaintiffs are entitled to the information requested in Interrogatory Nos. 10-12 with respect to the GKU sales.[4]

---

[4] Plaintiffs have not, however, offered any argument or evidence suggesting that any orders other than the GKU orders were treated differently under the Independent Broker Agreement. Thus, it appears that, for all orders/sales other than the GKU orders, plaintiffs were required to complete the orders and personally submit them to RTEV on company order forms. That is the reason for the undersigned's ruling with respect to Interrogatory Nos. 6-9.

## III. Requests for Production at issue:

### (A) Request No. 2:

This request seeks production of a copy of all tax returns filed by RTEV for the years 2008, 2009, and 2010. RTEV objected to that request on the basis that the information sought is irrelevant and because the request calls for the production of confidential and proprietary information. In order to obtain RTEV's tax returns, plaintiffs must establish both that the requested tax information is relevant and also that there is a "compelling need" for the information because the information in the tax returns is not "otherwise readily obtainable" through alternate forms of discovery.[5] Plaintiffs contend that they are entitled to RTEV's tax returns because the returns would "directly reflect information regarding amounts owed to plaintiffs" by RTEV.

The undersigned, however, disagrees that production of the highly sensitive information[6] contained in RTEV's tax returns is necessarily required for plaintiffs to calculate the commissions they are allegedly owed by RTEV. As RTEV notes in its opposition, the present suit is not one by shareholders of a company seeking to establish the company's worth to justify their valuation claims; instead, it is a suit where the relevant

---

[5] *See, U.S. v. Rajaratnam*, 2011 WL 507086 (S.D.N.Y. 2011)("In the civil context, 'courts in the past have concluded that the production of tax returns should not be ordered unless it appears that they are relevant to the subject matter of the action, and that there is a compelling need therefor because the information contained therein is not otherwise readily obtainable'"); See also, *In Re Williams*, 328 S.W.3d 103 (Tex.App.-Corpus Christi 2010)((holding that a landowner failed to demonstrate that tax returns of the president and wife of a company were relevant and material to a determination of a company's net worth, where the information could be obtained through other sources such as books, records, and financial statements that referred to their income).

[6] *See, Natural Gas Pipeline Co. of America v. Energy Gathering, Inc.*, 2 F.3d 1397 (5th Cir. 1993)(Income tax returns are highly sensitive documents, and courts are reluctant to order their routine disclosure as part of discovery. Not only are taxpayer's privacy concerns at stake, but unanticipated disclosure threatens effective administration of federal tax laws given the self-reporting, self-assessing character of the income tax system).

company sales records/financial data for particular years will supply the plaintiffs with the information they need to calculate the commissions they are purportedly owed. RTEV represents to the Court that it has already supplied the plaintiffs with such information. However, RTEV obviously has not yet supplied plaintiffs with sales data/financial records relating to RTEV's sales to GKU from July 1, 2009 to July 1, 2010, due to the dispute relating to Interrogatory Nos. 10-12 discussed above. Thus, although the undersigned finds that RTEV is not required to produce its tax returns at this time based upon the insufficient showing made by the plaintiffs,[7] RTEV is nevertheless required to turn over relevant sales data/financial records relating to the GKU sales for the time period at issue. Of course, if plaintiffs are still unable to calculate the commissions they are allegedly owed after RTEV produces that additional information, plaintiffs can make another request for RTEV's tax returns and, at that point, can attempt to come forward with evidence showing that they have exhausted all other available sources of financial information and have been unable to calculate the amount of commissions they are purportedly owed by RTEV.

**(B)     Request Nos. 7-13:**

Request for Production Nos. 7-13 seek any and all documents supporting RTEV's responses to Interrogatory Nos. 6-12. Since the undersigned determined above that RTEV need not provide supplemental responses to Interrogatory Nos. 6-9 (except to the extent

---

[7] In an effort at demonstrating a "compelling need" for RTEV's tax returns, plaintiffs simply state, in a conclusory manner, that their "central claim turns on the financial position of RTEV which can be gleaned from its tax returns." First, it is not necessary for plaintiffs to discover and prove RTEV's "financial position" in order to calculate the amount of commissions they are allegedly owed in this case. As RTEV argues in its opposition, its "reportable income in no way establishes the amount of sales or orders placed by [plaintiffs] pursuant to their personal efforts as independent brokers." Furthermore, the financial information that is necessary for plaintiffs to establish the amount of commissions they are allegedly owed by RTEV can be ascertained from other less sensitive documents, such as RTEV's sales records/financial data for the relevant time period.

8

that RTEV has not already produced information concerning orders submitted by plaintiffs to RTEV on company order forms after July 1, 2009), plaintiffs' motion to compel further responses to the corresponding Request for Production Nos. 7-10 should also be denied (except to the extent that RTEV has not already produced documents concerning orders submitted by plaintiffs to RTEV on company order forms after July 1, 2009, which documents shall be produced within fifteen (15) days of this Order). As to Request for Production Nos. 11-13, which correspond with Interrogatory Nos. 10-12, RTEV shall supply supplemental responses to those requests because the undersigned has determined that plaintiffs are entitled to the requested information concerning RTEV's sales to GKU during the designated period.

**(C)   Request No. 17:**

This request seeks production of a copy of the factory car and/or accessories orders placed by RTEV to E Car Pro and E-Way between July 1, 2009 and July 1, 2010. RTEV objected to this request on the basis that it is overly-broad and overly-burdensome and because the information sought is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. It further objected on the ground that the request seeks information that is private, confidential, and proprietary in nature.

In their motion and reply memorandum, plaintiffs have not explained how car and/or accessories orders that RTEV placed with other companies, E Car Pro and E-Way, have any relevance to their present suit for commissions for sales of RTEV products made by them. They simply state in a conclusory manner that "the information is certainly relevant to this action, and can only be obtained through RTEV." Since plaintiffs have failed to provide any information connecting the requested documents with their claims herein, they

have not overcome RTEV's objections based upon relevancy, burden, and their proprietary/privacy interests, and as a result, no further response to this request is required from RTEV.

**(D)    Request No. 18:**

This request seeks production of copies of the invoices and payments made for the factory car orders placed by RTEV to E Car Pro and E-Way between July 1, 2009 and July 1, 2010.  RTEV objected to this request on the same grounds that it objected to Request No. 17, and for the same reasons that the undersigned denied plaintiffs' motion to compel a supplemental answer to Request No. 17, their motion will be denied relative to Request No. 18.

**IV.    Plaintiffs' request for attorney's fees and costs:**

Pursuant to Fed. R. Civ. P. 37(a)(5)(C), since the present motion is being granted in part and denied in part and both parties have been given an opportunity to be heard, the undersigned finds that the most appropriate manner in which to apportion expenses for this motion is for each party to bear their own costs and fees.

Accordingly;

**IT IS ORDERED** that the Motion to Compel Discovery Responses, and for Attorney's Fees and Costs (R. Doc. 9) filed by plaintiffs, Bruce W. Thompson and John Cole Passman, is hereby **GRANTED IN PART** and **DENIED IN PART** as set forth in the above Ruling.

**IT IS FURTHER ORDERED** that defendant, Ruff & Tuff Electric Vehicles, Inc., shall produce, within fifteen (15) days of this Order, any information and documents pertaining

to orders submitted by the plaintiffs to RTEV on company order forms after July 1, 2009, to the extent it has not already done so, as well as supplemental responses to Interrogatory Nos. 10-12 and Request for Production Nos. 11-13.

**IT IS FURTHER ORDERED** that plaintiffs' request for an award of attorney's fees and costs is hereby **DENIED** and that each party shall bear their own costs and attorney's fees in connection with this motion.

Signed in chambers in Baton Rouge, Louisiana, April 20, 2011.

*[signature]*

**MAGISTRATE JUDGE CHRISTINE NOLAND**